UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SCOTT W. SKYLSTAD,

               Plaintiff,

   vs.

JASON REYNOLDS, THOMAS
STANTON, DAVE McCABE, KURT
VIGESSA, DAN LESSER, BRENT
AUSTIN, LYNETTE LONGSHORE,
CITY OF SPOKANE; DAN
VELOSKI, LINDA DAVIS, RYAN
McELROY, R.N. HOFFMAN, M.D.
ROSE, SPOKANE COUNTY; M.D.
MICHAEL CARLSON, M.D. SCOTT
REDMAN, M.D. MARGARET
HADDON, M.D. STEVEN
BEYERSDORF, DEACONESS
MEDICAL CENTER,

               Defendants.

NO.  CT-03-5104-LRS

ORDER GRANTING SPOKANE COUNTY
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Spokane County, Dan Veloski, R.N. Cheryl
Hoffman, Ryan McElroy, Linda Davis and M.D. Robert Rose's [hereinafter
"Spokane County defendants"][1] Motion for Summary Judgment (Ct. Rec. 97)
and plaintiff's Cross-Motion for Summary Judgment (Ct. Rec. 153).  No

---

[1] The Court notes that its Answer filed June 23, 2004, the County
denied Defendant Rose was its employee, claiming Rose was an
independent contractor.  Ct. Rec. 56, ¶ 3.3. However, the defendants'
memorandum in support of the motion summary judgment indicates he was
an employee.  Defendants' Memo. In Support at 2.

ORDER -1

responsive pleading was filed by the County defendants to plaintiff's response and cross-motion for summary judgment. Plaintiff is proceeding pro se.

Plaintiff has filed a civil rights action against the defendants alleging violations of the First, Eighth, and Fourteenth Amendments as well as medical malpractice against defendants Hoffman and Rose relating to requests plaintiff made for medical treatment while in the County jail. Plaintiff specifically alleges retaliation, cruel and unusual punishment, excessive force, deliberate indifference to medical needs, and medical malpractice.

Both sides have submitted exhibits to supplement their pleadings, which allows the court to consider the motions as ones for summary judgment. The court does so, and for the reasons stated below, defendants' motion is granted.

**I. FACTS**

This is the second time the undersigned judicial officer has considered plaintiff's allegations against Spokane County officials. Plaintiff sued a Spokane County prosecutor, detective, and other unnamed county officials in April 2001 alleging many of the same constitutional violations as in this case, though based upon entirely different facts. After having been given the opportunity to amend his complaint, the complaint was dismissed *prior to service* for failure to state claim. *See Skylstad v. Collins, et al.*, No. CS-01-0124-LRS, Eastern District of Washington, Ct. Rec. 5.

Plaintiff is presently incarcerated at the Stafford Creek Correction Center where he is serving his sentence for his 2002 state

ORDER –2

conviction for first degree robbery of a credit union occurring on September 17, 2001 and attempting to elude a police vehicle on September 19, 2001.  The events subsequent to the plaintiff's arrest on September 19, 2001 also form the basis of this civil suit.

Scott Skylstad arrived at the Spokane County jail in the early morning of September 20, 2001.  After a car chase, Skylstad had been stopped and arrested the evening of September 19, 2001 by Spokane City police officers for attempting to elude police.  During the stop, a police K-9 unit had been deployed which bit Skylstad's arm.  At the direction of arresting officers, Skylstad had been transported to Deaconess Medical Center where he received treatment for a 4-5 cm laceration and puncture wounds sustained to his right arm from the K-9.  It was noted tendons were protruding from the wound.  The wound was not closed at the time for fear of infection.  Instead, the wound was flushed and bandaged, and Skylstad was released for transport to the County jail with medical instructions.

The arresting city police officer told County officials that it was suspected plaintiff was under the influence of methamphetamine due to his inordinately strong resistence upon initial apprehension.  Skylstad later admitted to having ingested a "chunk" of methamphetamine on the evening of September 17, 2001, but denies having done so on September 19, 2001.  Toxicology readings taken from blood samples supplied at Deaconess the night of his arrest showed positive for methamphetamine, amphetamine, and THC.  Def. Statement of Fact 102, Def. Ex. 10.  Due to what plaintiff calls "toxic levels" of methamphetamine and amphetamine indicated in the readings, plaintiff now alleges defendants altered the blood samples.  However, while testifying under oath during his criminal

ORDER -3

trial in Spokane Superior Court on February 6, 2002, plaintiff admitted he was "really high" on September 19, 2001 and was paranoid, but wasn't hallucinating. Def. Ex. 3.

Upon arrival at the jail, Skylstad was booked by Defendant correction officer Linda Davis and placed in a cell. He was subsequently examined by on-duty jail nurse, Defendant Hoffman. Hoffman noted on Skylstad's receiving/screening form his injury to his arm, as well as bruises on his left hand, and cuts on his left hand, forehead nose, and right side of his head. Pltf. Ex. 3. Nurse Hoffman also knew he had been treated at Deaconess prior to his arrival at the jail.

Skylstad alleges Defendant McElroy ordered him into a cell and told him that before he could use the telephone he would have to remove the bandage on his arm. McElroy denies having made such statement. McElroy claims that early in the morning of September 20 he was doing his rounds and noticed Skylstad had pulled off his bandage from his arm and there was blood on the walls and floor of his cell. McElroy notified Defendant Sergeant Veloski. Together they entered the cell to check on plaintiff. It appeared to Defendant McElroy that Skylstad had been picking at his wound. Nurse Hoffman was called to examine him. Hoffman's notes indicate Skylstad had pulled off the wound's dressing because he thought they were too loose. She noted that he was not making sense and that he had pulled out "4-5" of shiny white material from the wound (possibly tendons)." Def. Ex. 16; Pltf. Ex. 5. Plaintiff was not responding to pain while redressing his arm. Based upon this behavior, she questioned whether he was on drugs. Because she believed Skylstad had exacerbated the injury to his arm, Nurse Hoffman requested Skylstad return to

///
ORDER -4

Deaconess emergency room. McElroy and another officer transported him to Deaconess for further treatment.

Skylstad alleges the allegation that he picked at his own wound was fabricated. Treating emergency physician Dr. Carlson's report indicated that he "did not believe there had been any acute change" to the injury. Notably, Nurse Hoffman's chart notes from October 9, 2001 note that "[inmate] states [he] *does not remember* removing his dressings or pulling tissue from wound..." Pltf. Ex. 16 (emphasis added).

Upon returning from Deaconess less than an hour later, Sgt. Veloski and Officer McElroy believed Skylstad still appeared to be under the influence of drugs. Sgt. Veloski approved Skylstad's placement in a restraint chair because he believed Skylstad was a threat to himself. Officer McElroy placed Skylstad in four-point restraints. Skylstad alleges McElroy, while placing him in the restraint chair said, "You shouldn't have sued Reynolds" and then proceeded to "tightly fasten the restraints into [his] open wounds deliberately to cause [him] pain and injury." Plaintiff's Statement of Facts No. 32, No. 42.

Nurse Hoffman was called to check the restraints at 3:40 a.m.. They were loosened to allow one finger under each restraint. Pltf. Ex. 10. Hoffman reevaluated Skylstad again before the end of her shift at 6:45 a.m. Pltf. Ex. 19. Her notes indicate the restraints were "ok", Skylstad was "a little more coherent," and Skylstad's right hand was "deeper red." Skylstad was advised he would be available for "sick call" with Dr. Robert Rose later that morning.

On September 20, Skylstad returned yet a third time to Deaconess Medical Center, where he underwent surgery on his arm, and then returned to the jail with a pain medication prescription. Plaintiff was

ORDER -5

subsequently seen by Defendant Dr. Rose for follow-up treatment of his injury and pain management.   Plaintiff claims to have suffered from continuous severe pain.   Medical Kites were sent on 10/8, 10/16, 10/25, 10/26, and 11/14.   Amongst other pain killer prescriptions, Dr. Rose prescribed Neurontin and Amitriptyline, which Dr. Rose admits can be considered psychotropic drugs, but which Dr. Rose claims were prescribed for the purpose of mediating Skylstad's pain response.   Affidavit of Robert Rose, ¶6.   Skylstad claims he would not have taken the drugs had he known they were psychotropic drugs.

## II. BURDEN OF PROOF

The summary judgment motions before the Court are subject to the standard of Federal Rule of Civil Procedure 56, that there be no genuine issue of material fact.   They are also subject to the shifting burdens of proof of *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986).   On cross-motions for summary judgment, the burdens to be carried by the opposing parties vary with the burdens of proof they must carry at trial.   To succeed on summary judgment, plaintiff must prove each element essential to the claims upon which he seeks judgment by undisputed facts.   *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (party with burden "must establish beyond peradventure all of the essential elements ..." (emphasis in original)).   "Where the moving party has the burden [of proof at trial] ... his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Schwarzer*, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-488 (1984).

In contrast, defendants face a lighter burden.   Because the
ORDER -6

defendants do not bear the burden of proof at trial, defendants need
only point to the insufficiency of plaintiff's evidence to shift the
burden to plaintiff to raise genuine issues of fact as to each claim by
substantial evidence.   *T.W. Electric Service, Inc. v. Pacific Elec.
Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing Celotex
Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1983); *Kaiser Cement Corp. v.
Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir.), cert.
denied, 107 S.Ct. 435 (1986)). If plaintiff fails to raise a genuine
issue of fact, then summary adjudication in favor of defendants will be
granted.

When judging the evidence at the summary judgment stage, the Court
does not make credibility determinations or weigh conflicting evidence,
and is required to draw all inferences in a light most favorable to the
nonmoving party.   *T.W. Electric*, 809 F.2d at 630-31 (*citing Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986));
*Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991).

The standard for judging a motion for summary judgment is the same
standard used to judge a motion for a directed verdict:  "whether the
evidence presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail as a
matter of law." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2512
(1986).

In meeting their burdens of proof, each party must come forward
with *admissible evidence*. Fed.R.Civ.P. 56(e). Conclusory, speculative
testimony in affidavits and moving papers is insufficient to raise
genuine issues of fact and defeat summary judgment. *See Thornhill
Publishing Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).
ORDER -7

Plaintiff must ultimately persuade the Court in opposing summary judgment that he will have sufficient *admissible* evidence to justify going to trial.

**III. DISCUSSION**

**A.   Spokane County's Motion to Dismiss for Lack of Personal Jurisdiction**

The Court first addresses Spokane County's request the Court dismiss the claims against the County for lack of proper service of process.  While admitting service was completed or adequate waivers were procured as to the individual County defendants, defendants claim service upon the Spokane County Auditor necessary to effectuate service upon the County itself never occurred.

In determining whether to dismiss a case for lack of sufficient service, the Court must liberally construe Fed.R.Civ.P. 4 to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice and will not be prejudiced by a continuance of the action. *Borzeka v. Heckler, 739 F.2d 444, 447 (9th Cir.1984); Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986). Also, dismissal is not required where the case involves a pro se incarcerated plaintiff proceeding in forma pauperis who is entitled to rely on the Marshal's service of process. *See Puett v. Blandford,* 912 F.2d 270, 275 (9th Cir.1990).

The Court notes the County filed two Answers (one to the original and one to the amended complaint).  The County has not complained that it did not receive actual notice of the lawsuit or is prejudiced by lack of service.  Moreover, counsel for the County has appeared and defended

///

ORDER -8

the County in this action up to this point.  Accordingly, the County's request for dismissal for lack of service is denied.

**B.   Federal Claims against Individual County Defendants**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and alleges defendants violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Defendants move for summary judgment on the ground that qualified immunity protects them from liability for the alleged constitutional violations.

An individual whose federal constitutional rights have been violated by a public official acting under color of state law may sue the official for damages pursuant to § 1983. *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir.2001).  To prevail on a claim under § 1983, the plaintiff must establish "(1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right ." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) (citations omitted).

Public officials are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). "If a public official could reasonably have believed that his actions were legal in light of clearly established law and the information he possessed at the time, then his conduct falls within the protective sanctuary of qualified immunity." *Orin*, 272 F.3d at 1214 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam )).

///

ORDER -9

The purpose of qualified immunity is to effect a balance between the rights of persons residing in this country to be free from blatant constitutional violations and the need to ensure that the larger needs of society are met and that law enforcement personnel are not unnecessarily diverted from their duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 813-14, 102 S.Ct. 2727, 2735-36, 73 L.Ed.2d 396 (1982). To determine whether a defendant is protected by qualified immunity, a court must perform a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must determine whether, "[t]aken in the light most favorable to the party asserting injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Id*. If the court determines the defendant's conduct violated the plaintiff's constitutional rights, the court must proceed to the second step of the analysis and determine whether the right was "clearly established, i.e., whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. In essence, at the first step, the inquiry is whether the facts alleged constitute a violation of the plaintiff's rights. If they do, then, at the second step, the question is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001) (citing Saucier, 121 S.Ct. at 2156). The Court addresses each claim separately.

**1. Denial of "Access to Courts" / Retaliation**

Plaintiff's opposition and cross motion for summary judgment couches his first claim as a claim for denial of access to courts. The

ORDER -10

Court notes that no such claim was raised at any time prior to his opposition to the County's motion. Access to courts claims involve official action which either frustrate a plaintiff in filing or preparing a lawsuit at the present time, or the alleged loss of a meritorious case or an opportunity to sue. *Christopher v. Harbury*, 536 U.S. 403, 413, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). The facts alleged do not allege any specific instance in which he was denied access to the courts.

Plaintiff's argument however raises the closely related claim of retaliation for the filing of a civil lawsuit, conduct protected by the First Amendment. Plaintiff alleges that he was placed in restraints, false reports were manufactured, and digital photos were manipulated, all in retaliation for his prior filing of a lawsuit against Spokane city police officer Jason Reynolds. The lawsuit, filed on April 19, 2001, was dismissed prior to service.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The plaintiff must establish both that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *Mt. Healthy City Bd. Of Educ.*, 429 U.S. at 285-87; *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314-16 (9th Cir. 1989)

ORDER -11

(inferring retaliatory motive from timing and nature of suspensions). For example, a prisoner complaining of a retaliatory transfer has the burden of proving that he would not have been transferred but for the exercise of his constitutionally protected rights. *Id.*

A prisoner suing prison officials under section 1983 for retaliation must further allege that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *see also Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation). In so doing, they "may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999). The plaintiff must also demonstrate that he suffered some adversity in response to his exercise of protected rights; that is, that the act of retaliation was actually adverse to plaintiff. *See Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1140 (4th Cir.1990).

Once a claim is presented, the burden shifts to the defendants to show, by a preponderance of the evidence, that they would have reached the same decision in the absence of the protected conduct, *Soranno's Gasco*, 874 F.2d at 1315, or, in the case of prison officials, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *Schroeder v. McDonald*, 55 F.3d 454 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.

ORDER -12

1994) (summary judgment properly granted where reasons for alleged retaliatory reclassification supported by "some evidence" and served legitimate penological purpose); *Pratt v. Rowland*, 770 F. Supp. 1399, 1405 (N.D. Cal. 1991) (no claim where prison officials had legitimate reason for placing prisoner in administrative segregation).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (*quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory ." *Id*. (quoting *Sandin*, 515 U.S. at 482).

Plaintiff alleges the defendants retaliated against him for his filing of a civil lawsuit in April 2001. The Court first notes that the lawsuit did not involve any of the named County defendants and it was dismissed prior to service. Plaintiff specifically claims someone digitally manipulated his photo to remove the appearance of bruising and/or scrapes and the defendants manufactured reports to cover-up the extent of his injuries. These allegations have no basis in fact and must be dismissed as conclusory allegations are insufficient to support a finding of retaliatory conduct. *See generally Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996). Plaintiff has also made no effort to demonstrate that defendants Veloski, Davis, Hoffman, or Rose were even aware of plaintiff's previous lawsuit at the relevant time. The only evidence in the record that any defendant possessed retaliatory animus toward plaintiff, is the plaintiff's allegation that while placing

ORDER -13

plaintiff in restraints, Defendant McElroy stated, "You shouldn't have sued Reynolds."  The defendants' evidence demonstrates that plaintiff was placed in the restraint chair for his own protection as he appeared under the influence of a controlled substance and was believed to have been injuring himself by "picking at" his wound.  Today plaintiff denies having done this, however, Nurse Hoffman's notes indicate that at the time when asked about the conduct, plaintiff responded he did not remember doing it.

Taking all inferences in plaintiff's favor and presuming Defendant McElroy made the statement "You shouldn't have sued Reynolds," the plaintiff has still not met his burden of demonstrating the lawsuit was the substantial motivating factor for the conduct of any of the defendants or proving the absence of legitimate correctional goals. Plaintiff can not prove that but for his filing of his previous lawsuit, the actions taken against him would not have occurred. *Mt. Healthy City Bd. Of Educ.*, 429 U.S. at 285-87.  Conclusory allegations are insufficient to support a finding of retaliatory conduct. *See generally Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (holding that a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment). The Court also notes the plaintiff has not alleged any chilling of the exercise of his first amendment rights, only that he was harmed by being placed in restraints.

Assuming this harm was sufficient to ground his cause of action and plaintiff had competent evidence to sustain a prima facie case of retaliation at least against McElroy, believing he made the statement "You shouldn't have sued Reynolds," McElroy would be entitled to

ORDER -14

qualified immunity. There is no question that the law clearly established that defendants cannot impose punishment in order to punish the prisoner for exercising his First Amendment right to pursue civil rights litigation in the courts. See *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985). However, a reasonable prison official could have believed the conduct was lawful, as he was carrying out an order authorized by his superior (Veloski) out of concern for the plaintiff's health and the security of the jail. Ensuring the health and welfare of inmates, as well as institutional security, are undeniably legitimate penological objectives. Consequently, the Court also concludes that defendant McElroy is entitled to the defense of qualified immunity with regard to the retaliation claim.

## 2. Excessive Use of Force

Plaintiff also asserts his placement in full restraints (performed by McElroy, and authorized by Sgt. Veloski) constituted an excessive use of force in violation of the Eighth Amendment. Plaintiff claims he was placed in full restraints without any "real" reason. Plaintiff's Statement of Fact No. 12; Plaintiff's Statement of Fact No. 10.

When officials stand accused of excessive use of force, the key inquiry is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Physical restraints are constitutionally permissible where there is penological justification for their use. *See Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). A condition or restriction may not be imposed during detention for punitive purposes. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447

ORDER -15

(1979).  In determining whether the force was applied for a legitimate purpose or for simply causing harm, the court considers the need for the application of the force, the relationship between the need and the amount of force that was used, the threat reasonably perceived by the officials, any efforts to temper the severity of a forceful response, and the extent of the injury inflicted.  *See Hudson*, 503 U.S. at 7. While significant injury is not required to make out an excessive force claim, the absence of serious injury is relevant to the inquiry and a *de minimis* use of physical force does not violate the Eighth Amendment. *Hudson*, 503 U.S. at 7, 9-10.

For several reasons, such considerations convince the Court that the record here does not create a factual issue regarding malicious or sadistic intent.  The undisputed facts show plaintiff posed a serious threat to himself and to institutional safety by his condition of being under the influence of methamphetamine and by removing his hospital bandage protecting his wound resulting in what was determined by jail staff to be a need to transport him back to the hospital to have the wound reassessed.  Blood was on the plaintiff himself, on the floor, and on the walls of the cell.

Although resulting in physical discomfort and emotional pain, the use of four-point restraints undisputedly caused plaintiff no physical injury.  More importantly, the jail staff carefully monitored plaintiff's physical condition while he was restrained.  A mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives would not suffice to support a jury finding that the officials restrained plaintiff in this manner "maliciously and sadistically for the very purpose of causing harm."

ORDER -16

*Whitley v. Albers*, 475 U.S. 312, 320-22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  Viewing all evidence in the light most favorable to the plaintiff, the Court finds the evidence does not support a reliable inference of excessive use of force under the standard explained above, and accordingly, this claim should not go forward.  The defendants are entitled to summary judgment on the plaintiff's excessive force claim.

### 4. Deliberate Indifference

Plaintiff also alleges defendants were deliberately indifferent to his medical needs.  The due process clause of the Fourteenth Amendment does require the responsible governmental authorities to provide medical care to persons who have been injured while being apprehended by the police. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).  The boundaries of this duty have not been plotted exactly; however, it is clear that they extend at least as far as the protection that the Eighth Amendment gives to a convicted prisoner from deliberate indifference to his/her serious medical needs. *Id.*  Specifically, a determination of "deliberate indifference" involves two elements: (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.1992) overruled on other grounds by *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). Such indifference includes the intentional delay, denial or interference with necessary medical treatment. *Id.*  At the same time, however, mere negligence is not enough. As such, "[a]llegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fail to

///
ORDER -17

establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Plaintiff claims to have had a "life threatening injury from severed veins that continued to bleed" upon being booked in the County jail. In his own opinion, he should have been placed in a hospital under the direct supervision of a doctor until receiving surgery. He further asserts that being placed in restraints, though it "more than likely save[d] [his] life", caused the "unnecessary and wanton infliction of pain." Plaintiff's Response at 16. Plaintiff finally claims defendants were deliberately indifferent by failing to properly diagnose plaintiff's pain and injury.

However, the undisputed evidence suggests otherwise. While the Court does not question whether plaintiff's injury qualifies as "serious," nothing in the record, other than plaintiff's own opinion, suggests plaintiff's condition was "life threatening" or that he should have been in the hospital until surgery. Plaintiff had just been treated *and released* from the hospital. Plaintiff was examined immediately by Nurse Hoffman upon being booked into the County jail, and repeatedly thereafter. It is undisputed that upon finding plaintiff had removed his bandage just hours after being booked, Nurse Hoffman re-examined the plaintiff and recommended he be transported back to the hospital, which he was. The transport of plaintiff back to the hospital demonstrates a deliberate concern for his well-being, not an indifference.

The hospital released him again less than an hour later. The record establishes plaintiff was regularly examined by medical staff and that medical kites with complaints regarding pain and pain medication,

ORDER -18

were responded to.  There is simply nothing in the record which suggests the medical staff failed to diagnose or treat plaintiff's serious injury or that their failure to return him to the hospital was unwise.  In any case, a bad medical judgment, on its own, does not constitute deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

The Court is also unable to find evidence of deliberate indifference as to the placement of the plaintiff in restraints.  Taking to be true plaintiff's allegation that Defendant McElroy tightly affixed the wrist restraints directly over his wound causing extreme pain, it was only "a moment later" when Nurse Hoffman arrived to check the restraints, and loosened them to allow a space of one finger.  Pltf. Ex. 17; Pltf. Ex. 10.  There is no evidence the placement of the restraints was the proximate cause of any injury.  In fact, plaintiff asserts it may have saved his life.  None of the facts alleged show the defendants' conduct violated his constitutional right to adequate medical care and to avoid the unwanton infliction of pain.  Accordingly, defendants are entitled to qualified immunity on plaintiff's deliberate indifference claims.

**C. State Law Claims against the Individual County Defendants**

Plaintiff alleges that Nurse Hoffman and Dr. Rose committed medical malpractice pursuant to R.C.W. 7.70 1) by failing to direct jail officials that he remain in the hospital, rather than in jail, until he had surgery; 2) by Nurse Hoffman failing to call the hospital/emergency doctor when she noticed his hand had turned "a deeper shade of red"; and 3) by Dr. Rose failing to properly treat plaintiff's pain and injuries

///

ORDER -19

and failing to inform him the prescribed pain medication was also a psychotropic drug.

Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element which is essential to his case and for which he would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sigmond v. Brown*, 828 F.2d 8 (9th Cir.1987) (per curiam). It is plaintiff's burden to demonstrate the failure to exercise the necessary degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances; (and) (2) that such failure was a proximate cause of the injury complained of." RCW 7.70.040. Plaintiff's failure to obtain necessary expert evidence to speak to the duty to obtain informed consent and breach of the standard of care, mandates dismissal of these claims. *Hutchinson v. U.S.*, 838 F.2d 390 (9th Cir. 1988); *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wash.2d 438, 449, 663 P.2d 113 (1983); *Guile v. Ballard Community Hospital*, 70 Wn.App. 18, 21-22, 851 P.2d 689 (1983). Furthermore, the Court notes plaintiff has submitted no evidence of proximate cause. Defendants are entitled to summary judgment regarding plaintiff's claims for medical malpractice.

**D. Municipal Liability**

In addition to suing the named individual County employees, plaintiff has sued the County "for the tortuous conduct of its employees." Amended Complaint at 3. No separate claims were ever made by the plaintiff against the County. There is no respondeat superior

ORDER -20

liability under section 1983. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691-94 (1978). Having cleared Dr. Rose and Nurse Hoffman from plaintiff's state law claims of medical malpractice, the County is entitled to summary judgment as there is no remaining basis for liability.

**IV. CONCLUSION**

Defendants have proven the insufficiency of the plaintiff's evidence. Plaintiff has failed to raise a genuine issue of material fact and has failed to prove each element essential to claims upon which he seeks summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that:

1. Defendants Spokane County, Dan Veloski, Linda Davis, Ryan McElroy, Cheryl Hoffman, R.N., and Robert Rose, M.D.'s Motion for Summary Judgment (Ct. Rec. 97) is **GRANTED;**

2. Plaintiff's Motion for Summary Judgment (Ct. Rec. 153) is **DENIED;**

3. Each of the causes of action alleged by plaintiff against Defendants Spokane County, Dan Veloski, Linda Davis, Ryan McElroy, Cheryl Hoffman, R.N., and Robert Rose, M.D. are hereby **DISMISSED WITH PREJUDICE;**

4. The Court's granting summary judgment has concluded the litigation in this case between the plaintiff and the above mentioned defendants. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure there is no just reason for delay and **JUDGMENT** shall be entered against plaintiff and in favor of Spokane County, Dan Veloski, Linda Davis, Ryan McElroy, Cheryl Hoffman, R.N., and Robert Rose, M.D.

///

ORDER -21

5.   The District Court Executive is directed to enter this Order, enter Judgment in favor of Spokane County, Dan Veloski, Linda Davis, Ryan McElroy, Cheryl Hoffman, R.N., and Robert Rose, M.D., and forward copies to the parties.

**DATED** this＿＿＿29th＿＿＿day of April, 2005.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER –22